**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

Maria L. A.,[1]

             Plaintiff,

    v.

Frank Bisignano,[2] Commissioner of Social Security,

             Defendant.

Case No. 2:25-cv-00233-DJA

**Order**

Before the Court is Plaintiff Maria L. A.'s motion for reversal of the Administrative Law Judge's ("ALJ") decision regarding her late spouse, Manuel D. A. R.'s Social Security appeal and for award of benefits or remand for further proceedings. (ECF No. 9). The Commissioner filed a response brief. (ECF No. 11). Plaintiff did not file a reply. Because the Court finds that the ALJ erred in certain regards, but did not err in others, and that remand for award of benefits is not proper, the Court grants in part and denies in part Plaintiff's motion. The Court finds these matters properly resolved without a hearing. LR 78-1.

## BACKGROUND

### I.    Procedural history.

Manuel[3] filed an application for a period of disability and disability insurance benefits on May 4, 2021, alleging disability commencing March 3, 2021. (ECF No. 9 at 3). The

---

[1] Plaintiff in this case was originally Manuel D. A. R. However, on October 23, 2025, Maria L. A., Manuel D. A. R.'s spouse, moved to be substituted in this action as Plaintiff given Manuel D. A. R.'s passing on August 30, 2025. (ECF No. 12). No party has opposed that motion. *See* LR 7-2(d). The Court grants it. *See* Fed. R. Civ. P. 25(a); *see* 20 C.F.R. § 404.503(b)(1).

[2] Frank Bisignano is now the Commissioner of Social Security and is substituted as a party.

[3] The Court refers to Manuel D. A. R. using his first name for clarity given the Judicial Conference of the United States' May 1, 2018 memorandum encouraging courts to use only the

1  Commissioner denied the claim by initial determination on December 27, 2021, and denied

2  reconsideration on July 15, 2022.  (*Id.*).  Manuel requested a hearing before an ALJ.  (*Id.*).  The

3  Commissioner appointed ALJ Kathleen Kadlec to preside over the matter.  (*Id.*).  The ALJ

4  conducted an oral hearing on March 23, 2023, and a supplemental hearing on September 27,

5  2023.  (*Id.*).  At the initial hearing, Manuel requested to amend the alleged onset date to

6  November 5, 2021, the day before Manuel turned 55.  (AR 149).  The ALJ published an

7  unfavorable decision on March 4, 2024.  (*Id.*).  The Appeals Council denied Manuel's request for

8  review on December 12, 2024, making the ALJ's decision the final decision of the

9  Commissioner.  (*Id.*).

10  **II.      The ALJ decision.**

11          The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R.

12  § 404.1520(a).  (AR 47-59).  At step one, the ALJ found that Manuel had not engaged in

13  substantial gainful activity since November 5, 2021, the amended alleged onset date.  (AR 49).

14  At step two, the ALJ found that Manuel has the following severe impairments: lumbar

15  degenerative disc disease, ankylosing spondylitis, and obesity.  (AR 49).  At step three, the ALJ

16  found that Manuel does not have an impairment or combination of impairments that meets or

17  medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

18  Appendix 1.  (AR 50).  In making this finding, the ALJ considered listings 1.15 and 1.16.  (AR

19  50-51).

20          At step four, the ALJ found that Manuel,

21              has the residual functional capacity to perform medium work as
22              defined in 20 CFR 404.1567(c) except he can lift, carry, push, and
                pull 50 pounds occasionally and 25 pounds frequently as well as
23              frequently stoop, kneel, crouch, crawl, and climb ramps and stairs.
                He is limited to frequent reaching bilaterally in all directions
24              including overhead.  The claimant can occasionally climb ladders
25              but is never to climb ropes or scaffolds.  He can occasionally work

26  first name and last initial of nongovernment parties.  *See* Hon. Wm Terrell Hodges,
27  *Memorandum, Privacy Concerns Regarding Social Security & Immigration Opinions*, COMM. ON
    COURT ADMIN. & CASE MGMT. (May 1, 2018) https://www.uscourts.gov/forms-rules/records-
28  rules-committees/suggestions/committee-court-administration-and-case-management-18-ap-c.

1
2

at unprotected heights and be exposed to vibration. He can frequently be exposed to non-atmospheric temperature extremes and moving mechanical parts, and can frequently operate a motor vehicle.

3
4

(AR 51).

5
6
7
8
9

At step five, the ALJ found that Manuel is able to perform past relevant work as a cook. (AR 56). The ALJ also found that there are other jobs that exist in significant numbers in the national economy that the claimant can perform, including short order cook at a light exertional level; hand packager at a medium exertional level; checker weigher at a medium exertional level; and stores laborer at a medium exertional level. (AR 57-58).

10

**STANDARD**

11
12
13
14
15
16
17
18
19
20
21

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." *Id.* The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

22
23
24
25
26
27
28

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

1  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d

2  1211, 1214 n.1 (9th Cir. 2005).  In determining whether the Commissioner's findings are

3  supported by substantial evidence, the court "must review the administrative record as a whole,

4  weighing both the evidence that supports and the evidence that detracts from the Commissioner's

5  conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80

6  F.3d 1273, 1279 (9th Cir. 1996).  Under the substantial evidence test, findings must be upheld if

7  supported by inferences reasonably drawn from the record.  *Batson*, 359 F.3d at 1193.  When the

8  evidence will support more than one rational interpretation, the court must defer to the

9  Commissioner's interpretation.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*

10  *v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

11  ## DISABILITY EVALUATION PROCESS

12       The individual seeking disability benefits has the initial burden of proving disability.

13  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995).  To meet this burden, the individual must

14  demonstrate the "inability to engage in any substantial gainful activity by reason of any medically

15  determinable physical or mental impairment which can be expected . . . to last for a continuous

16  period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  More specifically, the individual

17  must provide "specific medical evidence" in support of her claim for disability.  20 C.F.R.

18  § 404.1514.  If the individual establishes an inability to perform her prior work, then the burden

19  shifts to the Commissioner to show that the individual can perform other substantial gainful work

20  that exists in the national economy.  *Reddick*, 157 F.3d at 721.

21       The ALJ follows a five-step sequential evaluation process in determining whether an

22  individual is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R.

23  §§ 404.1520, 416.920).[4]  If at any step the ALJ determines that she can make a finding of

24  disability or non-disability, a determination will be made, and no further evaluation is required.

25  *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Step one requires

26  _____

27  [4] 20 C.F.R. § 404 addresses federal old-age, survivors, and disability insurance while 20 C.F.R.
    § 416 addresses supplemental security income for the aged, blind, and disabled.  However, the
28  five-step evaluation process under either section is the same.

the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(a)(4)(i).  SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit.  20 C.F.R. § 404.1572(a)-(b).  If the individual is engaged in SGA, then a finding of not disabled is made.  If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities.  20 C.F.R. § 404.1520(c); 20 C.F.R. § 920(a)(4)(ii).  An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work.  20 C.F.R. § 404.1521; 20 C.F.R.§ 920(c); *see also* Social Security Rulings ("SSRs") 85-28.   If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526; 20 C.F.R. § 416.920(a)(4)(iii).  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509; 20 C.F.R. § 416.909), then a finding of disabled is made.  20 C.F.R. § 404.1520(h); 20 C.F.R. § 416.920(a)(4)(iii).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC, which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  *See* 20 C.F.R.

§ 404.1520(e); *see also* SSR 96-8p.  In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; 20 C.F.R. § 416.945; *see also* SSR 16-3p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.913(a)(2).

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW").  20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(a)(1)(iv).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established.  In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA.  20 C.F.R. §§ 404.1560(b) and 404.1565; 20 C.F.R. § 416.960(b)(1)(i).  If the individual has the RFC to perform her past work, then a finding of not disabled is made.  If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(a)(4)(v).  If she can do other work, then a finding of not disabled is made.  Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do.  *Yuckert*, 482 U.S. at 141-42.

## **ANALYSIS AND FINDINGS**

Plaintiff makes two main arguments.  First, that the ALJ erred in considering the medical opinions of the state agency physical health consultants.  Second, that the ALJ erred by failing to articulate clear and convincing reasons for rejecting Manuel's testimony regarding his pain,

1    symptoms, and level of limitation. Because the Court finds that certain of Plaintiff's arguments in

2    support of both are persuasive, but that remand for further consideration rather than for award of

3    benefits is appropriate, the Court grants in part and denies in part Plaintiff's motion.

4    **I.    Whether the ALJ failed to properly consider the medical opinions of the state agency**

5        **physical health consultants.**

6        20 C.F.R. § 416.920c outlines standards for evaluating medical opinions. The ALJ is

7    required to articulate how persuasive they find all of the medical opinions in the record. 20

8    C.F.R. § 416.920c(b). The ALJ is required to articulate findings regarding only supportability

9    and consistency with the evidence. 20 C.F.R. § 416.920c(b)(2) (identifying two most important

10   factors, supportability and consistency), (c) (enumerating all factors); *Woods v. Kijakazi*, 32 F.4th

11   785, 791 (9th Cir. 2022). *Woods* affirms that the most important factors when evaluating the

12   persuasiveness of medical opinions are "supportability" and "consistency." *Woods*, 32 F.4th at

13   791 (citing 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical

14   source supports the medical opinion by explaining the 'relevant…objective medical evidence.'"

15   *Id.* at 791-92 (citing § 404.1520c(c)(1)). "Consistency means the extent to which a medical

16   opinion is 'consistent…with the evidence from other medical sources and nonmedical sources in

17   the claim.'" *Id*. (quoting § 404.1520c(c)(2)). The ALJ is obligated to consider the opinions from

18   each medical source and cannot reject an examining or treating doctor's opinion as unsupported

19   or inconsistent without providing an explanation supported by substantial evidence. *See Woods v.*

20   *Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); *see Kramer v. Kijakazi*, No. 20-cv-2065-GPC(AHG),

21   2022 WL 873630, at *4 (S.D. Cal. Mar. 24, 2022). "The agency must 'articulate ... how

22   persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R.

23   § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in

24   reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

25       Plaintiff raises four sub-arguments in support of her assertion that the ALJ erred in

26   considering the state agency physical health consultants, Hoa-Tuyet Bui, M.D., and Arthur

27   Pirone, M.D.'s medical opinions to be unpersuasive. First, Plaintiff argues that the ALJ did not

28   properly analyze the consistency factor. Second, she argues that, by rejecting both doctors'

medical opinions, the ALJ relied on her lay medical opinion in crafting the RFC.  Third, Plaintiff

argues that the ALJ did not properly analyze the supportability factor.  Fourth, Plaintiff argues

that the ALJ's statement that she would have still found Manuel not to be disabled even if she

found the doctors opinions somewhat persuasive is false such that remand for an award of

benefits is proper.  The Court is persuaded by Plaintiff's first and second arguments, but not the

third and fourth.

### A.    *The ALJ did not properly consider the consistency factor.*

First, Plaintiff claims that the ALJ erred by finding that Drs. Bui and Pirone's opinions

were inconsistent with the evidence of record, but not addressing the fact that their opinions were

consistent with one another.  (ECF No. 9 at 5).  The Commissioner does not directly address this

argument, but asserts that the ALJ otherwise properly found that the doctors' opinions

unpersuasive because they were based on evidence from 2020 and early 2021, before the onset

date in this case.  (ECF No. 11 at 5).  Plaintiff asserts that, while the ALJ found the pre-onset

evidence on which the opinions were based inconsistent with post-onset evidence, the ALJ failed

to explain why the pre-onset evidence differs from the post-onset evidence.  (ECF No. 9 at 6-8).

Plaintiff has the better argument.  In *Lora C. v. Comm'r of Soc. Sec.*, the Western District

of Washington found that an ALJ did not err by failing to consider whether two doctors' opinions

were consistent with one another because the ALJ had properly found that both opinions were

inconsistent with the weight of the rest of the medical evidence.  *See Lora C. v. Comm'r of Soc.*

*Sec.*, No. 3:24-cv-05302-GJL, 2024 WL 4803536, at *3 (W.D. Wash. Nov. 15, 2024).  However,

unlike the ALJ in *Lora C.*, who considered consistency with the medical evidence, here, the ALJ

did not explain why Drs. Bui and Pirone's opinions were not consistent with the medical evidence

or with one another.  As Plaintiff points out, the ALJ found that Drs. Bui and Pirone based their

opinions on evidence that largely pre-dated Manuel's onset date and that the evidence that post-

dated the onset date "demonstrates [Manuel] to have different limitations."  (AR 55).  But other

than addressing Manuel's normal gait in October of 2021, the ALJ does not discuss the pre-onset

evidence at all, let alone explain how it differs from the post-onset evidence.  (AR 52).  The Court

therefore finds that the ALJ did not support her consistency determination with substantial evidence.

### B.    The ALJ's RFC is not supported by substantial evidence.

Second, Plaintiff argues that, because the ALJ found Drs. Bui and Pirone's opinions unpersuasive on the basis of evidence that post-dated Plaintiff's onset date, the ALJ must have come up with the RFC by relying on her lay medical opinion because no medical professional reviewed the post-onset evidence.  (ECF No. 9 at 7-8).  Plaintiff relies on the Ninth Circuit's decision in *Day v. Weinberger* and the First Circuit's decision in *Nguyen v. Chater* for the proposition that the ALJ is not qualified to interpret raw medical data in functional terms.  (*Id.*) (citing *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) and *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)).  The Commissioner relies on the Ninth Circuit's decision in *Farlow v. Kijakazi* in response for the proposition that "ALJ's are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work."  (ECF No. 11 at 5-6) (quoting *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022)).

Plaintiff has the better argument.  While it is the ALJ's responsibility, not a physician's, to formulate the RFC, the ALJ is not qualified as a medical expert to interpret raw medical data.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (finding that an ALJ erred by going outside the record to medical textbooks to assess the claimant's physical condition after rejecting two uncontroverted medical conclusions); *see Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("[a]s a lay person…the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination.").  Additionally, while the Ninth Circuit affirmed an ALJ's decision rejecting the only medical opinion of record assessing a claimant's functional capacity in *Farlow*, that opinion does not stand for the proposition that it is never an error for the ALJ to do so.  *See Farlow*, 53 F.4th at 487-89.  This is because the Ninth Circuit in *Farlow* did not center its analysis on the RFC, but rather on whether it was proper for the ALJ to reject the medical opinion in the first place.  *Id.*  So, *Farlow* is distinguishable.

On the other hand, *Day* is also distinguishable.  There the Ninth Circuit found that a hearing examiner erred by rejecting two doctors' uncontroverted opinions of record without sufficient reasoning and then basing his opinion on an outside medical textbook.  *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).  But here, unlike the hearing examiner in *Day*, the ALJ did not analyze an outside medical source when creating the RFC.

Because neither *Farlow* nor *Day* are entirely on point, the First Circuit's decision in *Nguyen v. Chater*, and district court cases from the Ninth Circuit are instructive.  In *Nguyen*, the First Circuit determined that it was error for the ALJ to reject a doctor's uncontroverted opinion and then rely on the raw medical data in the record to formulate the RFC.  *Nguyen v. Chater*, 172 F.3d 31, 35-36 (1st Cir. 1999).  Similarly, in *deGutierrez v. Saul*, the Eastern District of California found that, after the ALJ rejected the medical opinions of record, the ALJ went on to base the RFC "solely on treatment notes, test results, and Plaintiff's testimony," which "did not provide sufficient indications of Plaintiff's functional limitations and were unclear as to their impact on Plaintiff's ability to work."  *deGutierrez v. Saul*, No. 1:19-cv-00463-BAM, 2020 WL 5701019, at *5-6 (E.D. Cal. Sept. 24, 2020).  "Thus, the ALJ apparently formulated an RFC based on her interpretation of the medical evidence, which is improper."  *Id*.  And in *Holtan v. Kijakazi*, this district found that the ALJ erred by simply summarizing the medical evidence without making it clear how the ALJ then translated that evidence into an RFC.  *Holtan v. Kijakazi*, No. 2:22-cv-01222-VCF, 2023 WL 2424648, at *3 (D. Nev. Mar. 9, 2023).  The court found this to be "particularly concerning because the ALJ did not rely on any of the medical opinions, underlining all of the medical opinions of record unpersuasive." *Id*. (emphasis in original).

Here, the Court finds that the ALJ erred by rejecting Drs. Bui and Pirone's medical opinions as unpersuasive and then not demonstrating how she arrived at her RFC.  Other than a letter and form submitted by Ethan Young, PA-C (which letter and form the ALJ also rejected as unpersuasive) the ALJ did not analyze any other medical opinions of record.  So, no medical opinions of record contradicted Drs. Bui and Pirone's opinions.  The ALJ therefore based her RFC on the medical records alone, including raw data like x-rays, radiology studies, tests, and joint exams.  And other than stating that "[w]hile radiology studies noted some findings, overall,

imaging failed to establish limitations beyond those assessed in the above residual functional capacity," and that "the claimant's obesity, even when combined with his other impairments, does not warrant a limitation below medium," the ALJ simply summarized the medical evidence without making it clear how the ALJ then translated that evidence into the RFC. (AR 52, 54). The Court therefore finds that the ALJ did not support her RFC determination with substantial evidence.

### C.    *The ALJ properly considered the supportability factor.*

Third, Plaintiff asserts that the ALJ erred in finding the medical opinions unsupported by the examination findings underlying them. (ECF No. 9 at 24). Plaintiff argues that Drs. Bui and Pirone acknowledged that Manuel's examination findings at times demonstrated normal gait and normal or mild issues, but still concluded that Manuel's x-ray and positive findings of tenderness showed changes consistent with ankylosing spondylitis. (*Id.*). So, Plaintiff argues, in finding that the examination findings did not in fact support the doctors' opinions, the ALJ substituted her opinion for that of the doctors'. (*Id.*). The Commissioner does not address this argument.

The Court is not persuaded by Plaintiff's reasoning. The ALJ was required to consider the extent to which Drs. Bui and Pirone supported their medical opinions with objective medical evidence. 20 C.F.R. § 404.1520c(c)(1) ("[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be"); *see Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) ("[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant…objective medical evidence.'"). And the ALJ executed that requirement by determining that certain of the records on which Drs. Bui and Pirone relied did not support their ultimate conclusion. (AR 55) (explaining that "[d]espite the claimant's pain allegations and the findings on imaging, the claimant's examination findings were generally normal or mild issues were noted."). The fact that Drs. Bui and Pirone also *acknowledged* those normal or mild findings does not mean that they *explained* how those findings translated into their conclusions. Indeed, in the section for additional RFC explanation,

Dr. Bui noted Manuel's pain, tenderness, and limited range of motion along with his normal gait, but did not address other normal findings and did not explain why those findings would result in the light RFC he assessed. (AR 178). Dr. Pirone also accepted Dr. Bui's explanation. (AR 190). Because the doctors did not explain why Manuel's normal gait or other normal findings would nonetheless result in a light RFC, the ALJ did not err in finding that Drs. But and Pirone's opinions were unsupported by the examinations and records on which they based those opinions.

### D.    The ALJ's statement that she would not have found Manuel disabled if she found Drs. Bui and Pirone's opinions somewhat persuasive is not in error such that remand for award of benefits is appropriate.

Fourth, Plaintiff disputes the ALJ's statement that even if she did find the doctors' opinions somewhat persuasive, it would still not result in a finding of disability. (ECF No. 9 at 9-10). Plaintiff points out that, although the ALJ believed that Manuel performed his past relevant work as a cook at a light level, he really performed it at a medium level because he walked the entire eight hour day. (*Id.*) (citing AR 56). So, under the doctors' assessment of light work and limitation of only walking six hours in an eight hour day, Manuel could not perform this work. (*Id.*). And the vocational expert only opined as to one other light job that Manuel could perform, which is not a significant range of work for a finding of not disabled. (*Id.*). Given this error, Plaintiff asks the Court to reverse and remand for an award of benefits. (*Id.*). The Commissioner does not address this argument.

The Court is not persuaded that the ALJ's statement was false such that remand for an award of benefits is proper. As a preliminary matter, Plaintiff is correct that it appears the ALJ did not properly characterize Manuel's past relevant work as a cook as light. The ALJ found Manuel's reports persuasive, which reports contained Manuel's explanation that he stood for eight hours each day without sitting in his former job. (AR 427, 441). But the ALJ did not acknowledge Manuel standing for eight hours. And both 20 C.F.R. § 404.1567(b) and Social Security Ruling 83-10 indicate that standing for eight hours would classify a job as being more demanding than light. *See* 20 C.F.R. § 404.1567(b) ("a job is in [the light work] category when it requires a *good deal* of walking or standing…") (emphasis added); *see* SSR 83-10 ("the full range

of light work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday."). But even if the ALJ considered Manuel's past relevant work to be medium work, it is not clear that the ALJ then erred in stating that she would still have found Manuel disabled if she found Drs. Bui and Pirone's opinions somewhat persuasive. This is because it is not clear whether, had the ALJ found the opinions somewhat persuasive, she would have incorporated their light work or six-hour limitations into the RFC such that Manuel could not perform his past relevant work. Plaintiff's argument assumes that the ALJ would have done so, but ignores that the ALJ stated she would have found the opinions only *somewhat* persuasive. Ultimately, even if the ALJ erred in assessing Manuel's prior work as light, it is not clear that she erred in her statement that she would not have found Manuel disabled if she had found Drs. Bui and Pirone's opinions somewhat persuasive. Therefore, as outlined more fully below, the Court declines to reverse and remand for payment on this issue. The Court will, however, remand this issue for the ALJ to explain why she characterized Manuel's past relevant work as light rather than medium.

## II.    Whether the ALJ provided clear and convincing reasons for rejecting Manuel's pain testimony.

The ALJ must make two findings before the ALJ can find a claimant's pain or symptom testimony not credible. 42 U.S.C. § 423(d)(5)(A) (explaining that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability" absent additional findings). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

1   "An ALJ's vague allegation that a claimant's testimony is not consistent with the

2   objective medical evidence, without any specific findings in support of that conclusion is

3   insufficient for our review." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102-1103 (9th

4   Cir. 2014). (internal quotations omitted).  "Although the ALJ's analysis need not be extensive, the

5   ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's

6   conclusions were supported by substantial evidence." *Id.*  It is not enough for an ALJ to state

7   their non-credibility conclusion and then summarize the medical evidence for their RFC

8   determination.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

9       Plaintiff argues that the ALJ failed to articulate clear and convincing reasons when

10   rejecting Manuel's testimony that his back pain prevents him from working.  (ECF No. 9 at 11-

11   23).  Plaintiff makes four sub-arguments in support of this point.  First, Plaintiff argues that the

12   ALJ erred by simply summarizing the medical evidence in rejecting Manuel's testimony, even

13   though the ALJ already found that the objective evidence demonstrated that Manuel's

14   impairments could reasonably cause his alleged symptoms.  Second, Plaintiff argues that the ALJ

15   erred in rejecting Manuel's testimony that although he had been on a medication called Simponi

16   Aria since 2015 and was previously able to work while on it, the medication gradually lost

17   effectiveness.  Third, Plaintiff argues that the ALJ improperly considered the fact that Manuel

18   received little treatment for his degenerative disc disease when rejecting his testimony related to a

19   different disease, his ankylosing spondylitis.  Fourth, Plaintiff argues that the ALJ erred in

20   rejecting Manuel's testimony because of his activities of daily living, which Plaintiff asserts were

21   not inconsistent with Manuel's testimony.  The Court finds Plaintiff's first, portions of the

22   second, and fourth arguments persuasive.  The Court therefore reverses and remands for further

23   proceedings on these issues.

24       **A.      *The ALJ erred by simply summarizing the medical evidence when rejecting***
            ***Manuel's testimony.***

25

26       First, Plaintiff argues that the ALJ simply summarized the medical evidence in rejecting

27   Manuel's testimony, despite already finding that the objective evidence demonstrated that

28   Manuel's impairments could reasonably cause his alleged symptoms.  (ECF No. 9 at 13-14).  The

1     Commissioner argues that the evidence of record contradicted Manuel's testimony and so, the

2     ALJ properly relied on it. (ECF No. 11 at 2-3). The Commissioner cites the Ninth Circuit's

3     decision in *Carmickle v. Comm'r* for the proposition that contradiction with the medical record is

4     a sufficient basis to reject Manuel's subjective testimony. (*Id.*) (citing *Carmickle v. Comm'r Soc.*

5     *Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)).

6          Plaintiff has the better argument. In finding Manuel's "statements concerning the

7     intensity, persistence and limiting effects of [Manuel's] symptoms are not entirely consistent with

8     the medical evidence and other evidence in the record," the ALJ summarized the medical

9     evidence without identifying which of Manuel's statements she found not credible and why. *See*

10    *Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015) (finding that an ALJ's decision

11    simply stating their non-credibility conclusion and then summarizing the medical evidence

12    supporting the RFC is "not the sort of explanation or the kind of 'specific reasons' we must have

13    in order to review the ALJ's decision meaningfully…"). And *Carmickle* is distinguishable.

14    There, the ALJ found a claimant's testimony that he had to "change positions constantly" when

15    sitting to be inconsistent with his full-time college attendance and found his testimony that he

16    could only lift ten pounds occasionally inconsistent with a doctor's opinion that the claimant

17    could lift up to ten pounds frequently. *Carmickle*, 533 F.3d at 1161. Here, on the other hand, the

18    ALJ did not specify which records were inconsistent with which portions of Manuel's testimony.

19    And the Court cannot make inferences of inconsistencies from the ALJ's summary of the

20    evidence that the ALJ did not explicitly make. *See Brown-Hunter*, 806 F.3d at 494-3-94

21    (explaining that although the district court "identified several inconsistencies between [the

22    claimant's] testimony and the record…the credibility determination is exclusively the ALJ's to

23    make, and ours only to review…[t]hus the inconsistencies identified independently by the district

24    court cannot provide the basis upon which we can affirm the ALJ's decision."). The Court

25    therefore finds that the ALJ's rejection of Manuel's testimony based on the medical evidence was

26    not supported by substantial evidence,.

27

28

1

**B.      The ALJ erred in part when rejecting Manuel's testimony that Simponi Aria lost effectiveness over time.**

2

3       Second, Plaintiff argues that the ALJ erred in rejecting Manuel's testimony that, although

4    he had been on a medication called Simponi Aria since 2015 and was able to work while on it, the

5    medication gradually became less effective resulting in him not being able to work.  (ECF No. 9

6    at 14-18).  The Commissioner argues in response that the ALJ appropriately found that Manuel's

7    debilitating conditions improved with treatment, particularly a medication called Cosentyx.  (ECF

8    No. 11 at 3).  The Commissioner asserts that Cosentyx was so effective that Manuel did not even

9    need to take ibuprofen or Celebrex for his pain, undermining his testimony of disabling pain.

10   (*Id.*).

11       In discussing Manuel's medication, the ALJ wrote the following:

12              In September 2023, the claimant reported not needing to take
                ibuprofen or Celebrex and instead was noted to be taking Cosentyx
13              every 4 weeks.  His provider also noted that he was taking
                methotrexate along with leucovorin.  The claimant noted "general
14              spine stiffness," but was also noted as "feeling some better."  On
                exam at that time, the claimant was noted to have decreased spine
15              range of motion, but his 28-joint examination was normal. (Exhibit
                26F/1-2) While he was noted to have severe sacroiliitis, he was also
16              noted to be responding to Cosentyx and there is no indication that
                he needs any additional medication such as ibuprofen.  (Exhibit
17              26F/2)

18
                While the claimant reported that he went off Simponi Aria as it was
19              not effective, this is not consistent with the record.  He had gained
                some weight and required a higher dosage (Exhibit 3F/4).  He also
20              reported some insurance issues.  (Exhibit 26F/4)  He was then put
                on a different form that was not as effective as it did not last as long.
21              (Exhibits 3F/4; 6F; 17F)   In October 2022, he reported that he
                wanted to go back on Simponi Aria. (Exhibit 17F/3)  However, after
22              this, the claimant was maintained on Cosentyx, methotrexate and
                leucovorin.  (Exhibit 17F; 26F)  He reported he did not require any
23              ibuprofen or Celebrex.  (Exhibit 26F/1).
24

25       (AR 54).

26       Plaintiff argues that the ALJ's statement that Manuel had not been on Simponi Aria since

27   onset is not supported by substantial evidence because he received Simponi Aria infusions every

28   eight weeks before, during, and after his initial and amended onset dates.  (ECF No. 9 at 15); (AR

825, 830-31).  The Court is not persuaded by this argument.  Plaintiff concedes that for a brief

time between October of 2021 and November of 2021, Manuel tried a different medication—

Simponi sc—and that he stopped Simponi Aria in June of 2022.  (ECF No. at 15); (AR 825, 830-

31).  The ALJ's statement is therefore not incorrect.

Plaintiff also argues that his testimony that Manuel went off of Simponi Aria because it

lost effectiveness is actually *consistent* with the record, contrary to the ALJ's assertion.  (ECF No.

9 at 15-18).  Plaintiff points out that Manuel continued Simponi Aria even after he stopped

working in March of 2021 (AR 151-54), and continually increased his dosages from 100 mg in

December of 2019 (AR 697) to 200 mg in March of 2020 (AR 668-69) to 250 mg in April of

2021 (AR 654-55).  Plaintiff points out that throughout this time, Manuel's notes reflect that he

continually reported more back discomfort and that the infusion benefits did not last two months,

despite the increasing dosage.  (AR 652-69) (records spanning March 10, 2020, to June 15, 2021,

indicating that "the patient has more back discomfort.  Infusion benefit does not last 2 months.").

The Court is not persuaded by this argument because Plaintiff does not address the ALJ's

assertion that Manuel's dosage increased due to weight gain.  And his records spanning March

10, 2020, to April 20, 2021 (when Manuel's dose increased to 250 mg) also consistently indicate

that "the patient needs to take Simponi Aria 300 mg for his body weight.  We will get auth for

300 mg."  (AR 656-69).  This is a rational reason for which ALJ to find that Plaintiff's Simponi

Aria treatments increased.  And when the evidence will support more than one rational

interpretation, the Court must defer to the Commissioner's interpretation.  *See Burch v. Barnhart*,

400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453,

1457 (9th Cir. 1995).

Plaintiff argues that the ALJ incorrectly found that Manuel went off Simponi Aria in 2021

due to insurance issues and so, the ALJ's rejection of Manuel's testimony based on the ALJ's

erroneous belief is not based on substantial evidence.  (ECF No. 9 at 17-19).  This argument is

persuasive.  Plaintiff points out that it appears from the ALJ's decision that the ALJ believed that

Manuel stopped Simponi Aria in November of 2021 due to insurance reasons and then tried

Simponi sc, which was not as effective.  (ECF No. 9 at 17-19); (AR 54).  This is because, in

stating that Manuel reported insurance issues, the ALJ cites to a treatment note dated May 11, 2023, in which note Manuel reported that he had stopped Simponi Aria eighteen months before due to insurance issues. (AR 54) (citing AR 1035)). However, eighteen months before May 11, 2023, is November of 2021. And Plaintiff points out that Manuel did not actually experience insurance issues at that time, but had requested to try Simponi sc as an alternative to Simponi Aria. (AR 827-831, 841, 850-5, 852). Manuel quickly asked to go back to Simponi Aria in November of 2021 with his last reported treatment being June of 2022. (AR 823-25) (November 30, 2021, records showing Manuel requesting to go back to Simponi Aria); (AR 850-51) (December 29, 2021, Simponi Aria infusion); (AR 845-46) (February 21, 2022, Simponi Aria infusion); (AR 875-78) (April 21, 2022, Simponi Aria infusion); (AR 870-73) (June 17, 2022, Simponi Aria infusion). The Commissioner does not address this discrepancy. But it appears that the ALJ may have believed that Manuel was off of Simponi Aria since October of 2021 until he asked to go back on it in October of 2022,[5] when really Manuel was only off of the drug since June of 2022.[6] It therefore appears that the ALJ may have rejected Manuel's testimony regarding the effectiveness of Simponi Aria on a basis that the record does not support. Because the ALJs must explain the reasons on which they base their decision, the Court finds that the ALJ erred rejecting Manuel's testimony regarding the effectiveness of Simponi Aria. *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 87 (1943) (explaining that "the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based"); *Treichler*, 775 F.3d at 1102 (explaining that the ALJ must "specifically

---

[5] Plaintiff concedes that after October of 2022, Manuel did experience insurance issues that prevented him from going back on Simponi Aria. It was not until October of 2022, after Manuel's last documented treatment of Simponi Aria in June of 2022, that Manuel requested to go back on Simponi Aria and faced difficulty given his new insurance. (AR 904-08) (records dated October 19, 2022, in which Manuel requested to restart Simponi Aria); (AR 965-71) (records dated February 15, 2023, indicating that Manuel requested a referral to a rheumatologist who would take his new insurance).

[6] This is particularly true because the ALJ states that Manuel "reported some insurance issues…[and] was then put on a different form that was not as effective," referring to Simponi sc. (AR 54).

identify the testimony [from a claimant] she or he finds not to be credible and…explain what evidence undermines the testimony.").

Plaintiff also challenges the ALJ's statement that after October of 2022—after Manuel requested to go back on Simponi Aria—Manuel was "maintained on Cosentyx, methotrexate and leucovorin" instead.  (ECF No. 9 at 18-19).  Plaintiff points out that Manuel was not prescribed Cosentyx until sometime after May 11, 2023, and did not report feeling better on the medication until September 28, 2023, the day after the ALJ's supplemental hearing.  (*Id.*); (AR 1036-37) (a record dated May 11, 2023, in which Manuel's doctor did not apply for or list Cosentyx); (AR 1032-33) (a record dated September 28, 2023, in which Manuel's doctor noted that Manuel had received Cosentyx and was "feeling some better," and did not need to ibuprofen or Celebrex); (AR 113-141) (September 27, 2023, hearing transcript).  So, Plaintiff argues that the ALJ could not have properly rejected Manuel's testimony given his positive response to Cosentyx when for most of the period that the ALJ analyzed, Manuel was not taking Cosentyx.  (ECF No. 9 at 19-20).  Plaintiff's argument is well taken.  The testimony that the ALJ summarized and then rejected came from Manuel's March 23, 2023, hearing, months before he began taking Cosentyx and reported improvement on it.  (AR 52).  The ALJ also summarized and rejected Manuel's report dated June 23, 2021, about two years before he began Cosentyx.  (AR 440-47).  So, the ALJ's reliance on Manuel's improvement with Cosentyx is not a clear and convincing reason to have rejected his testimony and reports.  *Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021) (finding that an ALJ erred by disregarding all of a plaintiff's testimony, including a portion about his early-period incapacity, on the basis of inconsistencies only clearly applicable to the late-period testimony).

The Court does not find that the ALJ erred in stating that had not been on Simponi Aria since onset or in finding that any lost effectiveness was due to Manuel's weight gain.  But the Court does find that the ALJ erred in seemingly finding that Manuel went off of Simponi Aria in 2021 due to insurance issues and in rejecting Manuel's symptom testimony due to the effectiveness of Cosentyx.  The Court therefore finds that the ALJ's analysis of Manuel's medication in rejecting Manuel's symptom testimony is not supported by substantial evidence.

1

2

### C.   The ALJ did not err in addressing Manuel's degenerative disc disease as Plaintiff claims because the ALJ did not reject any portion of Manuel's testimony in doing so.

3      Third, Plaintiff argues that the ALJ improperly considered Manuel's little treatment for his

4   degenerative disc disease to be a reason to reject his pain testimony attributed to his ankylosing

5   spondylitis.  (ECF No. 9 at 20-21).  Plaintiff also points out that the ALJ erroneously referred to

6   Manuel's ankylosing spondylitis as spondylosis, which is a different disease.[7]  (*Id.*).  While

7   Plaintiff is correct that the ALJ incorrectly referred to Manuel's disease as spondylosis, it is not

8   clear to the Court that the ALJ erred beyond typographically.  This is because the ALJ elsewhere

9   properly refers to Manuel's disease as ankylosing spondylitis.  Additionally, it is not clear the

10   Court that the ALJ rejected Manuel's pain testimony related to his ankylosing spondylitis because

11   of the little treatment he received for his degenerative disc disease.  Instead, after explaining the

12   RFC limitations, the ALJ wrote that "[w]hile the claimant has a serious condition (spondylosis),

13   he has little to no treatment for his degenerative disc disease and again, examinations reveal few

14   deficits."  (AR 55).  The ALJ did not connect Manuel's degenerative disc disease treatment to any

15   of his testimony.  So, the Court does not find that the ALJ erred in this regard.

16

17

### D.   The ALJ erred in rejecting Manuel's testimony because of his activities of daily living.

18      Finally, Plaintiff argues that the ALJ erred in rejecting Manuel's testimony because of his

19   activities of daily living.  (ECF No. 9 at 22-23).  Plaintiff argues that Manuel's activities of

20   driving and going out to places like the grocery store, church, the farm, and his father's multiple

21   time per week were not inconsistent with his alleged limitations.  (*Id.*).  Plaintiff relies on the

22   Ninth Circuit's decision in *Ferguson v. O'Malley*, for the proposition that "an ALJ may not rely

23   on a claimant's daily activities to discredit his symptom testimony when 'the ALJ does not

24   explain how, in her view, Plaintiff's testimony about those daily activities is inconsistent with his

25

---

26   [7] Plaintiff explains that spondylitis is a group of inflammatory conditions affecting the joints in the spine while spondylosis is not due to inflammation, but rather to the wear and tear of the

27   spine.  (ECF No. 9 at 21) (citing *What's the Difference Between Spondylitis and Spondylosis?*, HEALTHLINE, https://www.healthline.com/health/ankylosing-spondylitis/spondylitis-vs-

28   spondylosis (last visited December 16, 2025)).

1   testimony about the severity and frequency' of his symptoms." (ECF No. 9 at 23) (citing

2   *Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024) (cleaned up)). The Commissioner

3   responds that Manuel's activities of daily living were not limited to the amount one would expect

4   and points out that Manuel's doctors repeatedly told him to exercise, suggesting that they thought

5   he was more functional than he let on. (ECF No. 11 at 3-4). The Commissioner relies on the

6   Ninth Circuit's decision in *Molina v. Astrue*, for his position. (ECF No. 11 at 3) (citing *Molina v.*

7   *Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012)).

8          Plaintiff has the better argument. The ALJ did not explain how Manuel's activities are

9   inconsistent with his testimony of increased pain when standing longer than two hours, needing to

10  lay down for about two or three hours afterwards, experiencing pain when walking 100 feet or

11  yards, that lifting made everything hurt, only lifting twenty to twenty-five pounds, and that

12  bending down hurt a lot. *Ferguson* is also more on point than *Molina.* In *Ferguson*, the Ninth

13  Circuit noted that the ALJ had failed to explain how the plaintiff's activities of daily living like

14  watching television, playing video games, helping care for his mother's wild cats, preparing

15  simple meals, going out to his shop to work on projects, and walking every now and then were

16  inconsistent with the plaintiff's testimony that he got headaches two or three times per week,

17  which would sometimes last a day or two. *Ferguson*, 95 F.4th at 1203. The Ninth Circuit

18  explained that the plaintiff "can both do nothing when he has severe headaches and engage in his

19  daily activities when he does not." *Id.* On the other hand, in *Molina*, the Ninth Circuit affirmed

20  the ALJ's finding that the plaintiff's activities of daily living including walking her two

21  grandchildren to and from school, attending church, shopping, and taking walks undermined her

22  testimony that she was incapable of being around people without suffering from debilitating panic

23  attacks. *Molina*, 674 F.3d 1104, 1113 (9th Cir. 2012).

24          Here, like the ALJ in *Ferguson*, the ALJ failed to explain how Manuel's activities of daily

25  living were inconsistent with his claimed limitations. Unlike the activities in *Molina* which were

26  clearly inconsistent with the plaintiff's claimed limitations, here, Manuel's activities are not

27  clearly inconsistent with his claimed limitations. For example, it is not clear whether Manuel

28  spent longer than two hours at any of the locations he visited or whether he stood while there. It

is also unclear whether visiting those locations required Manuel to walk further than 100 feet or yards in any given stretch.  Similarly, it is not clear whether Manuel lifted objects heavier than twenty to twenty-five pounds or bent down at those places.  And the ALJ did not otherwise explain how Manuel's activities were inconsistent with his testimony.  While the ALJ relies in part on her previous discussion of inconsistencies with the record, as outlined above, the ALJ simply summarized the record when rejecting Manuel's testimony.  The Court therefore finds that the ALJ erred in relying on Manuel's activities of daily living when rejecting his testimony.

**III.    Whether reversal and remand for further proceedings or for award of benefits is appropriate.**

Plaintiff argues that reversal and remand for payment of benefits is the appropriate remedy to address the ALJ's failure to properly consider Drs. Bui and Pirone's opinions.  The Court does not find this to be the case.  When evaluating whether this case presents the "rare circumstances" justifying a reversal and remand for payment, the court normally applies a three-step test. *Treichler*, 775 F.3d at 1100-01.  First, the court asks whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence.  *Id.*  Second, if the ALJ has erred, the court asks whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful.  *Id.*  Third, if the court concludes that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony true as a matter of law and then must determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding.  *Id.*  When all three elements of the test are satisfied, a case raises the "rare circumstances" that allow the court to exercise its discretion to depart from the ordinary remand rule and to award benefits.  *Id.* at 1101-1102.  However, even when those "rare circumstances" are present, the decision whether to remand a case for additional evidence or simply to award benefits is in the court's discretion.  *Id.*

Here, this case does not present the rare circumstances that would justify a reversal and remand for payment.  Plaintiff asks the Court to reverse and remand for payment on the issue of the ALJ's consideration of the medical opinions.  However, even though the ALJ erred in some

regards by not properly considering Drs. Bui and Pirone's opinions, there are outstanding issues that the Court must resolve before determining that Manuel was disabled.  Indeed, there is an open question of whether, if the ALJ found Drs. Bui and Pirone's opinions somewhat persuasive, she would have still found Manuel disabled.  Further administrative proceedings would be useful in resolving these issues.

Because there are outstanding issues that further administrative proceedings could address, the Court cannot find that the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding.  So, the Court denies Plaintiff's request that the Court credit Manuel's testimony as true and award benefits and instead remands the case for further proceedings.

**IT IS THEREFORE ORDERED** that Plaintiff's motion (ECF No. 9) is **granted in part and denied in part.**  It is granted in part regarding Plaintiff's request that the Court reverse and remand the ALJ's decision for further proceedings.  It is denied in part regarding Plaintiff's request that the Court reverse and award benefits.

**IT IS FURTHER ORDERED** that this matter remanded for further proceedings so that the ALJ may further develop the record regarding the following:

(1) the consistency factor in discussing the persuasiveness of Drs. Bui and Pirone's opinions;

(2) how the ALJ formulated the RFC;

(3) the exertion level of Manuel's past relevant work as a cook;

(4) the ALJ's rejection of Manuel's testimony based on the medical record;

(5) the ALJ's statement that Manuel stopped Simponi Aria for insurance reasons and the records on which the ALJ based that statement; and

(6)  the ALJ's rejection of Manuel's testimony based on his activities of daily living.

**IT IS FURTHER ORDERED** that Plaintiff's motion to substitute (ECF No. 12) is **granted.**  Maria L. A. is substituted as the Plaintiff in this matter in place of Manuel D. A. R.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED: December 23, 2025

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE